IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MELISSA RATCLIFF HARPER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CARILION MEDICAL CENTER, )<br>**Serve:** )<br>**Registered Agent Nicholas C. Conte** )<br>**Office of Corporate Counsel** )<br>**213 South Jefferson Street** )<br>**Suite 1600** )<br>**Roanoke, VA 24011** )<br>)<br>Defendant. ) | Civil Action No.: 7:20cv703<br><br><u>JURY TRIAL DEMANDED</u> |

## COMPLAINT

Plaintiff, Melissa Ratcliff Harper, by counsel, moves for judgment against Defendant Carilion Medical Center (hereinafter, "Carilion") and as grounds therefore states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal question presented by the Age Discrimination in Employment Act, as codified under 29 U.S.C. §§ 621 through 634 ("ADEA"). *See generally* 28 U.S.C. § 1343(a)(4).

2. Venue properly lies in the Roanoke Division of the Western District of Virginia in that all the discriminatory acts alleged herein occurred within the Western District of Virginia.

3. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 28, 2020; received a Dismissal and Notice of

1

Rights from the EEOC dated August 26, 2020 (Attached as **Exhibit A**); files this complaint within 90 days of receipt of that Dismissal and Notice of Rights; and, has exhausted all administrative processes.

## THE PARTIES

4. At all times material hereto, Plaintiff is and has been a resident of Roanoke, Virginia. Plaintiff was born in July 1968[1] and is currently 52 (fifty-two) years old.

5. On information and belief, Carilion Medical Center is a health care organization based in the Commonwealth of Virginia.

6. Carilion was an employer of Plaintiff at all times material hereto as defined pursuant to the ADEA.

## FACTUAL ALLEGATIONS

7. Melissa Ratcliff Harper was employed with Carilion for more than 30 (thirty) years, from 1988 until she was demoted in February of 2020 and then constructively discharged from employment on or about March 4, 2020.

8. At all times relevant hereto, Ms. Harper worked at Carilion Roanoke Memorial Hospital for the Forensic Nursing Examiner Program, a center under the Emergency Department, as RN Forensic Team Lead.

9. Ms. Harper had a mentally and physically exhausting job, and she was a dedicated employee.

10. Ms. Harper's job duties included examining sexual assault and other crime victims, collecting evidence, lecturing on her field of expertise, writing policies,

---

[1] Ms. Harper's exact date of birth is not included due to privacy concerns and filing requirements as per the United States District Court Western District of Virginia Local Rules.

supervising the six nurses in her department, including making their schedules (until Ms. LeAnn Creasy was hired as Unit Director in October of 2017), and meeting with community representatives concerning her field of expertise.

11. Ms. Harper regularly worked 50+ (fifty or more) hours per week.

12. In addition to her normal scheduled shifts, Ms. Harper was often on-call and frequently made herself available at most hours of the day and night to answer questions for nurses and the leadership team. In fact, Ms. Creasy informed nurses to contact Ms. Harper, when Ms. Harper was off work, with clinical questions as Ms. Creasy was often unable to answer clinical questions herself.

13. There were many occasions on which Ms. Harper worked over 24 consecutive hours for Carilion without going home.

14. Being awake for this length of time created a safety hazard, which Ms. Harper reported to Darrell Van Ness, Senior Director.

15. During her employment with Carilion, Ms. Harper provided presentations at numerous well-known conferences and events in her field.

16. Ms. Harper worked without incident for almost 30 (thirty) years until Ms. Creasy was hired as Unit Director in October of 2017.

17. Ms. Creasy is approximately 30 (thirty) years of age and, accordingly, significantly younger than Ms. Harper.

18. Within the first month after Ms. Creasy was hired, Ms. Creasy asked Ms. Harper when she [Ms. Harper] planned to retire.

19. Ms. Harper was only 49 (forty-nine) years of age at the time.

20. Thereafter, Ms. Creasy often questioned Ms. Harper about retiring, continuing until Ms. Harper was constructively discharged in 2020.

21. Ms. Creasy told Ms. Harper that she [Ms. Harper] was "fucking ridiculous" and that Ms. Harper's thoughts and recommendations were "stupid."

22. Ms. Creasy also referred to Ms. Harper as a "control freak" and "bully." When asked for examples of these alleged perceived behaviors, Ms. Creasy could provide none.

23. Ms. Creasy also prohibited from Ms. Harper from moving to a normal, daytime schedule, which was the plan prior to Ms. Creasy's arrival as Unit Director. Moreover, Ms. Creasy prohibited Ms. Harper from picking her shifts, which had been the policy with respect to employees with a certain level of seniority — a level of seniority that Ms. Harper had obtained.

24. Ms. Creasy also inappropriately asked Ms. Harper's late husband, who at the time worked in the Emergency Department, whether he and Ms. Harper still slept in the same bed.

25. Starting in November of 2018, Ms. Harper had numerous false allegations lodged against her at work, all of which originated with Ms. Creasy, and was written up for the first time in her 30 (thirty) plus year career by Ms. Creasy.

26. In December of 2018, Ms. Harper reported the discriminatory age-related statements and unfounded write-up to Ms. Creasy's supervisor, Darrell Van Ness, Senior Director.

27. In the same discussion with Mr. Van Ness in December of 2018, Ms. Harper indicated to Mr. Van Ness that she intended to resign because she could no longer endure the discriminatory treatment by Ms. Creasy.

28. In response, in the same discussion with Mr. Van Ness in December of 2018, Mr. Van Ness asked Ms. Harper to not resign and suggested that if the treatment endured

that he would start the write-up process for Ms. Creasy related to Ms. Creasy causing a hostile work environment.

29. Despite the fact that the hostile work environment never ceased, upon information and belief, Ms. Creasy has not been reprimanded to date.

30. Continuing, at Mr. Van Ness' request, Ms. Harper also wrote the job description for the Forensic Nurse Specialist position, which was created and intended to be filled by Ms. Harper.

31. Shortly thereafter, Mr. Van Ness approached Ms. Harper and angrily accused Ms. Harper of making a Corporate Compliance Complaint.

32. It was not Ms. Harper who called Corporate Compliance.

33. Ms. Harper was told by Mr. Van Ness that if she kept "muddying the water," referring to the Corporate Compliance Complaint, she would not get the Forensic Nurse Specialist position.

34. Ms. Harper was never placed in the Forensic Nurse Specialist position.

35. Then, in late 2019 through early February of 2020, Ms. Harper had numerous job duties removed from her responsibilities, including the removal of her responsibility for reviewing charts for two new nurses and her orientation duties for forensic nurses.

36. These job duties were reassigned to younger employees.

37. The unfounded write-up, removal of these responsibilities, the marginalization of Ms. Harper's position, and the reduction in the level of Ms. Harper's responsibilities affected the likelihood of Ms. Harper receiving promotions, and therefore the potential for increased compensation in the future.

38. Shortly thereafter, on or about February 9, 2020, Ms. Harper was notified

that she was being demoted.

39. The demotion was based on false allegations.

40. Ms. Harper resigned with an effective date of March 4, 2020, as she was unable to endure the working conditions, discrimination, and retaliation any longer.

41. At the time of her constructive discharge, Ms. Harper was suffering from severe stress and anxiety due to the discriminatory treatment at work.

42. Carilion thereafter paid Ms. Harper through March 4, 2020 but refused to let her work out her notice.

43. Ms. Harper was replaced by a younger individual.

44. Ms. Harper was not the only nurse to resign under similar circumstances.

45. For example, on information and belief, April Bennett, approximately 51 (fifty-one) years of age, resigned from the department due to Ms. Creasy's discriminatory treatment based upon age as well.

46. In addition, Ms. Creasy sent text messages to Ms. Harper questioning Ms. Harper about the ages of other employees.

47. At all times, Ms. Harper met or exceeded Carilion's expectations.

48. Ms. Harper was praised for her work throughout her time at Carilion.

49. In November of 2019, just months before she was demoted, Ms. Harper was rated 4.9 out of 5.0 on her annual performance review.

50. And, in the weeks leading up to her demotion and constructive discharge, Ms. Harper was intrinsically involved with helping Carilion, including working with Carole Agee, Senior Associate General Counsel, Nancy Agee, President and CEO, and Carilion's lobbyist, to review House Bill 808 (survivors of sexual assault; definitions, every hospital to provide treatment or transfer services) to identify whether Carilion met

the requirements of the Bill, and if not, to determine how Carilion could meet the requirements.

51.     In addition, Ms. Harper had been intimately involved for the previous two (2) years working with Paul Davenport, Emergency Services VP, and Mr. Van Ness to improve forensic services throughout Carilion's healthcare system. Mr. Davenport indicated to Ms. Harper that he fully trusted Ms. Harper and had always appreciated her work for Carilion.

52.     Accordingly, Ms. Harper's demotion and constructive discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon her age and which are indicative of Carilion's discriminatory animus and age bias against its older employees.

## COUNT I:  CLAIM FOR AGE DISCRIMINATION

53.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

54.     The actions of Defendant as described herein constitute harassment, hostile work environment, disparate treatment, and discrimination with respect to the compensation, terms, privileges, or conditions of employment, because of Plaintiff's age, in violation of the ADEA.

55.     Carilion demoted and constructively discharged Plaintiff based upon age in violation of the ADEA.

56.     The stated reasons for Ms. Harper's demotion and constructive discharge from employment were a pretext for age discrimination.

57.     Carilion has engaged in a pattern and practice of age discrimination and fostered a work environment charged with discrimination and hostile to Ms. Harper and

7

other ADEA-protected employees.

58. Ms. Creasy and Mr. Van Ness were acting in the course and scope of their employment with Defendant at the times relevant hereto; therefore, Defendant is liable for their actions under the doctrine of *respondeat superior*. Ms. Creasy's and Mr. Van Ness' actions against Plaintiff were committed during working hours and at her place of employment and/or were in conjunction with work-related responsibilities.

59. The actions of Defendant as described herein constitute discrimination and hostile work environment based upon age in violation of the ADEA.

60. As a direct result, Plaintiff has suffered, and will continue to suffer, loss of income and damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

61. Defendant acted willfully and with actual malice or with reckless disregard of the law in depriving Plaintiff of income because of her age, so as to support an award of liquidated damages.

## COUNT II:  CLAIM FOR ADEA RETALIATION

62. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

63. The actions of Defendant as described herein constitute retaliation for engaging in protected activity, to include reporting age discrimination and hostile work environment, in violation of the ADEA.

64. As a direct result, Plaintiff has suffered and will continue to suffer loss of income and damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

65. Defendant acted willfully and with actual malice or with reckless disregard

of the law in retaliating against Plaintiff for reporting age discrimination, so as to support an award of liquidated and punitive damages.

WHEREFORE, Plaintiff Melissa Harper, asks the Court to enter judgment against Defendant as follows:

(1)   Issue declaratory judgment that Defendant's acts, policies, practices and procedures violated Plaintiff's rights as secured by the Age Discrimination in Employment Act;

(2)   Issue a permanent injunction restraining Defendant from violating the provisions of the Age Discrimination in Employment Act;

(3)   Order Defendant to make Plaintiff whole by reinstating Plaintiff to her position prior to her demotion and paying her for all damages incurred due to the loss of employment, including but not limited to lost wages and benefits; as well as an award of liquidated damages and/or punitive damages, in amounts to be determined during the course of discovery and at trial;

(4)   Award Plaintiff her costs and attorney's fees and expenses; and

(5)   For such other and further relief as may be just and equitable.

Trial by jury is demanded.

Respectfully submitted,

/s/ Brittany M. Haddox
Brittany M. Haddox, Esq. (VSB #86416)
Thomas E. Strelka, Esq. (VSB #75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB #92598)
Monica L. Mroz, Esq. (VSB # 65766)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011

Tel: 540-283-0802
brittany@strelkalaw.com
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com
monica@strelkalaw.com
*Counsel for Plaintiff*